RORICK ET AL. *v.* BOARD OF COMM'RS OF EVER-GLADES DRAINAGE DIST. ET AL.

No. 554. Argued March 28, 29, 1939.—Decided May 15, 1939.

---

[21] *Bramwell* v. *U. S. Fidelity & Guaranty Co.,* 269 U. S. 483, 490.

Mr. William Roberts, with whom Messrs. W. H. Watson and Samuel Pasco were on the brief, for appellants.

Mr. Clarence G. Ashby, with whom Mr. Fred H. Kent was on the brief, for the Board of Commissioners, appellee.

Messrs. Tyrus A. Norwood and Marvin C. McIntosh, Assistant Attorneys General of Florida, with whom Mr. George Couper Gibbs, Attorney General, was on the brief, for the Trustees of the Internal Improvement Fund, appellees.

Mr. Justice Frankfurter delivered the opinion of the Court.

The case is here on appeal under § 238 of the Judicial Code as amended, 28 U. S. C. § 345, to review a decree of a district court of three judges convened under § 266 of the Judicial Code as amended, 28 U. S. C. § 380, denying an interlocutory injunction and dismissing the bill and supplemental bills. The bills challenged the validity of certain Florida statutes as impairments of the obligation of contract between the Board of Commissioners of Everglades Drainage District and the appellants, as holders of some of its outstanding bonds. The decree of the district court was based on its conception of the applicability of *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, but this and other questions are not now open for consideration if § 266 does not cover a situation like the present. If there be a jurisdictional barrier here, it binds us though not invoked by the appellees.

The record is singularly obscure. This litigation, which has extended over eight years, is but one phase of a complicated controversy pursued in both state and federal courts.

The bill was filed on May 19, 1931. A supplemental bill was filed July 4, 1931. The prayers of the bills were amended on November 5, 1931. A district court of three judges was convened on November 14, 1931. On September 17, 1932, orders were entered denying a motion to dismiss, and granting an interlocutory injunction conditioned on the filing of a bond for $50,000. Answers were filed in October and November, 1932. The required bond was not given and on February 23, 1933 an order was entered that the interlocutory injunction should be vacated. The matter then lay dormant until a second supplemental bill was filed on July 19, 1937. It was not until August 2, 1938, that the order sought here to be reviewed, denying the motion for an interlocutory injunction and dismissing the bill, was made.

The facts will be summarized only to the extent necessary to expose the jurisdictional problem. The Everglades Drainage District (hereafter called District), comprising a large acreage in the southern part of Florida, was established by Chapter 6456, Laws of Florida, Acts of 1913. The administration of the District was entrusted to a Board of Commissioners (hereafter called the Board), a body corporate. The lands were originally part of a grant made by Congress to Florida in 1850 whereby Florida undertook to apply the lands and proceeds derived from them to drainage and reclamation purposes. In fulfillment of this obligation Florida, in 1855 (Chapter 610, Laws of Florida, Acts of 1855), vested the lands in trustees of the Internal Improvement Fund (hereafter called Trustees) consisting of designated state officials. Subsequent legislation for the District made numerous changes affecting its financial administration and the relations between the District and the Trustees (Chapters 13,633, 14,717; 17,902, Laws of Florida, 1929, 1931 and 1937). The changes concerned rates of taxes, disposition of their proceeds, procedure in cases of tax delinquency, and authorization of bond issues.

Appellants sued as holders of bonds issued prior to these latter statutes claiming that they impaired obligations created by such bonds as defined by § 23 of the Act of 1913 which specifically provided that the terms of that Act should constitute "an irrepealable contract" between bondholders and the District. In substance the bill and the supplemental bills alleged a reduction of the available taxes below those in effect at the time the bonds were issued, an adverse change in the debt service, and a diversion of revenues to purposes other than those required by the Act of 1913. The bills also complained of important changes effected by the later Acts regarding tax delinquencies on the lands in the District. It was alleged that under the earlier Act lands on which taxes were delinquent were to be sold at auction and, for want of bidders for the amount of taxes plus costs, were to be bid off to Trustees who were under a duty to pay for tax certificates as well as the drainage taxes in the future. Violation of contractual rights were alleged in that Trustees had ceased paying for the tax certificates as well as the drainage taxes, and that § 65 of the 1931 statute had declared that Trustees held the certificates in trust for the District and required them to transfer the certificates to the District. Further violations of the contract were attributed to powers given to the District, after 1913, whereby it was authorized to compromise taxes, to accept bonds for redemption of lands, and to cancel tax liens on lands which came into the ownership of the United States. Finally, a claim of impairment of contract was based on changes in the membership of the District after 1913.

The Board of Commissioners, the Trustees and various county tax officials were named as defendants in the suit. The bills sought to enjoin the defendants distributively, and with much particularity, from effectuating the various modifications made by the Acts of 1929, 1931 and 1937 concerning the rates of taxes, the disposition of

their proceeds, the procedure in cases of tax delinquency, the authorization of bond issues, and the internal relations between the District and the Trustees as all these were claimed to be originally defined by the Act of 1913.

This appeal is properly here only if the present suit required the convening of a district court of three judges under § 266. We do not think that this was such a suit, because the state statutes from which relief was sought do not constitute legislation "of general application," *Ex parte Collins*, 277 U. S. 565.

*Ex parte Collins, supra,* reinforced by *Ex parte Public National Bank*, 278 U. S. 101, authoritatively established the restricted class of cases to which the special procedure of § 266 must be confined. "Despite the generality of the language" of that Section, it is now settled doctrine that only a suit involving "a statute of general application" and not one affecting a "particular municipality or district" can invoke § 266. Plainly, the matter here in controversy is not one of statewide concern but affects exclusively a particular district in Florida. This Court in effect so held in denying a motion for leave to file a petition for writ of mandamus to convene a court under § 266 made by the Board of Commissioners in a suit by a bondholder claiming impairment of the obligation of contracts existing under the 1913 Act. *Ex parte Everglades Drainage District*, 293 U. S. 521. The present suit differs from the earlier case in that here the trustees of the Internal Improvement Fund were made defendants. But what is decisive under § 266 is not the formal status of the officials sued but the sphere of their functions regarding the matter in issue. An official though localized by his geographic activities and the mode of his selection may, when he enforces a statute which "embodies a policy of statewide concern," be performing a state function within the meaning of § 266. *Spielman Motor Sales Co.* v. *Dodge,* 295 U. S. 89. Conversely a

state official charged with duties under a statute not of statewide concern is not a state functionary within the purposes for which § 266 was designed. What was matter of local concern in *Ex parte Everglades Drainage District, supra,*—the administration of the affairs of the District—remains matter of local concern in the present suit. The nature of the controversy—legislation affecting a locality "as against a policy of statewide concern"— has remained unchanged even though the present bills made it pertinent to join the Trustees. This suit thus fails to satisfy an essential requirement of § 266.

Since the time for appeal to the Circuit Court of Appeals has expired, and since the jurisdictional problem determined in this case had not been fully settled prior to this decision, we will not terminate the litigation by dismissing the appeal but, in accordance with the practice followed in *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.,* 292 U. S. 386, we will order the decree vacated and the cause remanded to the district court for further proceedings to be taken independently of § 266 of the Judicial Code.

*Decree vacated.*

MR. JUSTICE DOUGLAS took no part in the consideration or disposition of this case.