**Aaron HOLTZMAN, Plaintiff,**

v.

**Harriet HOLTZMAN and William J. Greene, Clerk of the Family Court of the State of New York for the County of New York, Defendants.**

**No. 75 Civ. 2038.**

United States District Court,
S. D. New York.

June 10, 1975.

Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City, for plaintiff; Samuel R. Pierce, Jr., David Fleischer, New York City, of counsel.

London, Buttenwieser, Bonem & Valente, New York City, for defendant Harriet Holtzman; Franklin S. Bonem, New York City, of counsel.

MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Aaron Holtzman, the plaintiff in this action, seeks a preliminary and permanent injunction to declare Section 429 of the New York Family Court Act illegal. This particular section deals with the sequestration of assets found within the State of New York. The plaintiff claims that this injunctive action is based upon the Fourteenth Amendment to the United States Constitution and upon Section 1983 of Title 42, U.S.C. The plaintiff herein has requested the convening of a three judge court, pursuant to 28 U.S.C. §§ 2281 and 2284, to issue the injunction and declare that the sequestration provisions of Section 429 of the New York Family Court Act are unconstitutional. At the same time, the defendant Harriet Holtzman has moved to dismiss this action on various grounds.

For the reasons set out below the motion by the plaintiff is denied in all respects and the defendant's motion to dismiss is granted.

The legal issues raised by both sides are fairly complex and I believe that before discussing these problems it is best that the uncontroverted facts be set out so that all may be seen in proper context.

In 1965, the defendant Harriet Holtzman and the plaintiff Aaron Holtzman were married in New York City. They are now embroiled in a separation and support action in the Family Court for the County of New York (Manhattan). For the purpose of clarity the defendant Harriet Holtzman will be referred to as "wife" and the plaintiff Aaron Holtzman will be referred to as "husband".

At all times relevant hereto, the husband was and is a resident, domiciliary and citizen of the Republic of Mexico. The wife was and is a citizen of the United States. After the marriage the husband and wife took up residence in

Mexico City. Between the date of the marriage and early 1974, when the parties separated and the wife returned to New York, three children were born of the union. These children are now residing with their mother in New York City and are involved in the Family Court action to the extent that the wife is seeking support not only for herself but also for them.

On March 14, 1974, some 13 months prior to the time this action was brought, the wife obtained an order from the Family Court directing the Clerk of that Court to sequester funds of the husband on deposit at a New York bank. After the sequestration had been effected, on March 21, 1974 the wife immediately filed in Family Court the action for support. This action was based upon *quasi in rem* jurisdiction over the funds sequestered. The summons and petition for support were mailed to the husband in Mexico.

Both counsel for the husband and counsel for the wife agree that the wife could not have obtained personal jurisdiction for the Family Court over the husband even through the most liberal reading of the New York long arm statute. N.Y. CPLR § 302, (McKinney 1972).

In the application for the Order of sequestration made to Judge Pagnucco of the Family Court, the wife alleged that the husband had informed her that he would no longer make support payments for her and the three children and that in fact he had stopped such payments. The application also stated that if sequestration was not effected the husband could immediately transfer his funds out of the United States and that without sequestration of the funds any orders of the Family Court for the support of the wife and the children would be totally unenforceable.

After the sequestration had been effected and apparently after the husband received the summons and petition, the husband moved in the Family Court to vacate the order of sequestration. The motion was denied. Thereafter the husband appealed to the Appellate Division. That appellate court dismissed the appeal for procedural reasons (the husband had failed to apply for permission to appeal) but the Appellate Division went out of its way to say that if the matter was properly before it, it would have affirmed on the merits of the appeal. At least in the abortive appeal to the Appellate Division the husband argued the same "due process" position which is advanced in the case at bar.

Before turning to the specific arguments of the parties, two things should also be noted: first, the hearing on the support petition is now scheduled for June 12, 1975 after the husband has successfully had it adjourned five times and second, immediately prior to the institution of this action the husband entered a general appearance in the State Family Court action.

■ Husband claims that the sequestration provisions attacked are unconstitutional because of the "absence of provisions for an immediate post-sequestration hearing and the absence of a provision requiring the party seeking a sequestration to post a bond." (Plaintiff's Memorandum of Law, p. 4)

Since the husband had the opportunity to move to vacate the sequestration (and did so) the first part of this argument must fall.[1] It is clear that the Appellate Division of the New York State system would have actually adjudicated the merits if the husband had proceeded properly. To say that in this case there was no opportunity for prompt review is to ignore the record.

---

1. I recognize that in *Sugar v. Curtis Circulation Co.,* 383 F.Supp. 643, 648–49 (S.D.N.Y. 1974) the fact that there existed a right to move to vacate the attachment was not considered dispositive on the "hearing" question. The *Sugar* court looked to the issues of (1) burden of proof and (2) the supportability of the attachment solely on the grounds upon which the order had been issued. I find these considerations less important in the matrimonial area where public policy and social welfare must also be taken into account.

■ The argument that the plaintiff seeking a support order from the Family Court should be required to post a bond is a request to ignore reality. A wife with three minor children who is suing for support certainly cannot be expected to post a bond for such a sequestration order as part of her application for financial aid from her former husband.

■ Husband, however, argues that such a rational disposition of this case is precluded by the decisions of the United States Supreme Court in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and the decision of a three judge court in this Court in *Sugar v. Curtis Circulation Co.*, 383 F.Supp. 643 (S.D.N.Y. 1974), *cert. granted*, 421 U.S. 908, 95 S.Ct. 1556, 43 L.Ed.2d 773 (1975).

The legal community and the parties involved herein are all well aware that the decisions cited above by plaintiff all involve situations where the defendants were local residents, subject to *in personam* jurisdiction and an order of garnishment, attachment or replevin was granted *ex parte*. Here jurisdiction could only be obtained *quasi in rem* through the sequestration. The Family Court clearly ruled on this *twice*—once at the issuance of the order of sequestration and again in the denial of the motion to vacate the order of sequestration brought by the husband. This is not an occasion similar to the situations presented by the parties in *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the *Sniadach* case nor the *Sugar* case. In the *Sugar* case, for example, the plaintiffs were involved in a lawsuit in the Supreme Court of Westchester County when the defendant obtained an *ex parte* attachment order in New York County. While the Court in *Sugar* held the attachment statute unconstitutional as applied, it noted at 383 F.Supp. 646, fn.

5, a number of exceptions to the rules laid down by the United States Supreme Court in *Mitchell, Sniadach* and *Fuentes*, and at least one court has specifically recognized the validity of a state attachment statute which permitted a state court to obtain *quasi in rem* jurisdiction, one of the exceptions noted in *Sugar*.[2] In that case, *Stanton v. Manufacturers Hanover Trust Company*, 388 F.Supp. 1171 (S.D.N.Y.1975), the court said:

"In the case at bar, we are not dealing with a ground of attachment involving fraud, speculation or evasion of service. See CPLR § 6201(2) through (8). All these grounds relate to the security function of the writ of attachment, that is, giving the plaintiff an advance security interest in defendant's property because defendant's prior fraudulent acts create a doubt that a judgement will be paid. In this case, we are dealing with the other function of attachment, namely, giving a court *quasi in rem* jurisdiction when the defendant is a non-resident. This ground, the one used in the case at bar is found in CPLR § 6201(1):

"'The defendant is a foreign corporation or not a resident or domiciliary of the state'. Obviously, while questions of fraud may be ill-suited for preliminary ex parte, determination, questions of residence can easily be so determined."

Here we are presented with a similar problem. Admittedly, there was no chance to obtain *in personam* jurisdiction over husband. Yet the wife's support action was properly brought in a jurisdiction where only a sequestration order could vest the family court with *quasi in rem* jurisdiction over the husband. Where there is a situation where a wife is suing for the support of her minor children, it seems clearly constitutionally permissible to me to permit the sequestration complained of here. This is particularly so in view of what ap-

2. The authorities are not, however, unanimous on this question. See *In re Law Research Services, Inc.*, 386 F.Supp. 749, 752 (S.D.N.Y.1974).

pears to be the invariable state practice to permit the husband to move to vacate the order of sequestration.

Plaintiff also argues that even if I find that the sequestration of plaintiff's property was constitutionally permissible when effected, as I have now so found, subsequent events have rendered the continuation of the sequestration constitutionally impermissible. Plaintiff himself has now entered a general appearance and claims that "It is hollow pretense to justify the continuation of a pre-judgment sequestration employed initially for the purpose of acquiring jurisdiction after that purpose has been served." Plaintiff's Memorandum, p. 15. It appears that this issue has never been properly raised in the Family Court proceedings. If plaintiff feels that "subsequent events" require the setting aside of the sequestration order, he should make this argument to the court which initially entered the sequestration order.

Accordingly, I find that there is no substance to the husband's motion to convene a three judge statutory court and the matter will be dismissed.

It is so ordered.